KENNETH F. MATTFELD, A.K.A. KENNETH F. MATTFELD, JUNIOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mattfeld v. Commissioner
Docket No. 11881-90
United States Tax Court
T.C. Memo 1992-273; 1992 Tax Ct. Memo LEXIS 293; 63 T.C.M. (CCH) 2991; May 12, 1992, Filed *293 Decision will be entered for respondent. Paul William Raymond, for petitioner. Thomas R. Lamons, for respondent. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $ 7,164 and $ 7,516 in petitioner's Federal income taxes for 1986 and 1987, respectively, and additions to tax under section 6661(a)(1) of $ 1,791 and $ 1,879, respectively, for those years. The issues for decision are whether petitioner is entitled to deductions relating to his sailboat charter activity and whether he is liable for the additions to tax determined by respondent. All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Long Beach, California, at the time he filed his return. Petitioner was employed full time as a financial analyst prior to and during 1986 and 1987. Prior to 1985, petitioner had experience operating both sailboats and powerboats for pleasure. While in high school, he and a friend "ran a boat rental and sailing school". *294 In 1983, he and others chartered a sailboat in the Virgin Islands for about 10 days. During that charter, it was necessary to employ a boat captain on board the chartered boat because petitioner's sailing resume did not qualify him to take the boat by himself. During that charter, petitioner was impressed by the lifestyle of the boat captain and by the level of charter activity in the Virgin Islands. Prior to June 1985, petitioner began shopping around for a sailboat. On June 14, 1985, he made an offer to purchase a Crealock 37 sailboat, named the DROR, for $ 60,000. The offer was not accepted. In about July 1985, petitioner consulted with Ian Bruce (Bruce) of the Newport Sailing Club in Newport Beach, California, regarding its charter program for Pacific Seacraft yachts. (Pacific Seacraft was the manufacturer of the Crealock 37.) Bruce gave petitioner various materials concerning the Newport Sailing Club's charter program. Petitioner relied on those materials in making an investment decision to participate in the Newport Sailing Club's charter program. Among the materials provided to petitioner was a schedule of member charter rates dated March 1985. The member charter *295 rates listed for a Crealock 37 were $ 135 for a "half weekday", $ 175 for a "full weekday", and $ 190 for a Saturday, Sunday, or holiday. Petitioner prepared a cash-flow projection dated December 15, 1985, relating to the possible acquisition of a Crealock 37 and participation in the Newport Sailing Club's charter program. Petitioner's projection was as follows: Crealock 37-Cash Flow Projection 12/15/85 Assumptions: Dec. 85 Purchase at $ 72,500 Newport Sailing Club Rates 1985
1986
1987
1988
1989
1990
Revenue:
Estimated Days
1 60 60 60 60 Daily Rate
425 425 425 425 425 Annual Gross
$    425 $ 25,500 $ 25,500 $ 25,500 $ 25,500 Expenses:
Commissions
$    149 $  8,925 $  8,925 $  8,925 $  8,925 Sales Tax
9 536 536 536 536 Insurance
0 1,200 1,200 1,200 1,200 Slip Fees
350 4,200 4,200 4,200 4,200 Maintenance
0 1,000 1,000 1,000 1,000 Interest
0 6,000 6,000 6,000 6,000 Depreciation
10,875 15,950 15,225 15,225 15,225 Subtotal
$ 11,383 $ 37,811 $ 37,086 $ 37,086 $ 37,086  Expenses
Book Income
($ 10,958)
($ 12,311)
($ 11,586)
($ 11,586)
($ 11,586)
Cash Flow
Marginal
30%
30%
30%
30%
30%
Tax Rate
Taxes
$  3,287 $  3,693 $  3,476 $  3,476 $  3,476 Depreciation
10,875 15,950 15,225 15,225 15,225 Operations
$  3,205 $  7,333 $  7,115 $  7,115 $  7,115  Subtotal
Investment
($ 14,500)
0 0 0 0 Mortgage
0
($  1,000)
($  1,000)
($  1,000)
($  1,000)
($ 54,000) Principal
Investment Tax Credit
7,250 0 0 0 0 Proceeds
68,000 from Sale
Capital
( 27,200) Gains Tax
Sales Tax Due
( 2,199)
Net Cash
($  4,045)
$  6,333 $  6,115 $  6,115 $  6,115 ($ 15,399) Flow
NPV at 10%
$  5,975 *296 Petitioner discussed his anticipated sailboat purchase with Joseph Greenblatt, a certified public accountant familiar with the Newport Sailing Club charter activities. Petitioner was advised and understood that, because of a change in the tax law, the investment tax credit would not be available on the purchase of a sailboat for charter unless the sailboat were purchased and placed in service during 1985. On December 28, 1985, petitioner purchased the DROR for $ 77,000. When he purchased the DROR, petitioner believed that he would save money by performing some maintenance himself. He also believed that the DROR would be promoted by the Newport Sailing Club as a desirable sailboat for charter. Various repair and maintenance problems developed, however, that were handled or mishandled by a person at the dock where the DROR was moored. Petitioner's expenses were more than he believed that they should have been, and the charters of the DROR were fewer than petitioner believed that they should have been. In August 1986, he expressed to Bruce dissatisfaction with the activities of the Newport Sailing Club. Thereafter, petitioner moved the DROR to a Long Beach marina, where he continued *297 to attempt to secure charters. On his Federal income tax returns for 1985 through 1989, petitioner reported the following items relating to his sailboat activities: 1985
1986
1987
1988
1989
Rents received
$ 135 $ 1,965 $ 2,975 $ 1,200 $ 1,075 Expenses other
than depreciation
54 22,834 15,045 14,231 12,026 Depreciation
10,973 16,093 15,362 15,362 15,360 Net loss
(10,892)
(36,962)
(27,432)
(28,393)
(26,311)
Respondent disallowed for 1986 and 1987 deduction of the sailboat activity expenses in excess of income from chartering the sailboat. OPINION Petitioner has the burden of proving that respondent's determination is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure; Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133. In this case, petitioner must prove that his sailboat charter activity was entered into with an actual and honest profit objective and was not an activity not engaged in for profit as defined in section 183(c). If the activity is not engaged in for profit, deductions arising from it are allowed only to the extent of gross income *298 earned from the activity. Sec. 183(b)(2). A determination of whether the requisite profit objective exists is to be made on the basis of all the surrounding facts and circumstances of the case. Sec. 1.183-2(b), Income Tax Regs. Greater weight is to be given to the objective facts than to the taxpayer's mere statement of his intent. Sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., lists some of the factors to be considered in determining whether an activity is engaged in for profit. The factors listed in the regulation are as follows: (1) Manner in which the taxpayer carried on the activity. (2) The expertise of the taxpayer or his advisors. (3) The time and effort expended by the taxpayer in carrying on the activity. (4) Expectation that assets used in activity may appreciate in value. (5) The success of the taxpayer in carrying on other similar or dissimilar activities. (6) The taxpayer's history of income or losses with respect to the activity. (7) The amount of occasional profits, if any, which are earned. (8) The financial status of the taxpayer. (9) Elements of personal pleasure or recreation. These factors are not intended to be exclusive, *299 and no one factor or majority of the factors need be considered determinative. Golanty v. Commissioner, 72 T.C. 411, 426-427 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). In this case, petitioner conducted a reasonable investigation prior to purchasing the sailboat and had the necessary personal expertise to engage in a sailboat charter business. He moved the sailboat from the Newport Sailing Club to a Long Beach marina when the results achieved at the Newport Sailing Club were disappointing. So far as the record discloses, he conducted the activity in a businesslike manner and relied on advisors with expertise in the business. Petitioner contends that he had a reasonable expectation that the sailboat would appreciate in value. The projection that he prepared prior to purchasing the sailboat, however, assumed that the boat would be sold in 1990 for less than the purchase price. (Petitioner paid more for the sailboat, $ 77,000, than he had projected, $ 72,500. This difference, however, is not material to our decision.) He did not, therefore, rely on anticipated appreciation as a means of profiting from the activity. *300 In any event, petitioner has not proven that reasonably anticipated appreciation would ever offset his years of operational losses. Petitioner was trained and employed as a financial analyst, and he was thus able to understand strengths and weaknesses in projections. He testified that he had rejected as unreliable projections prepared by another boat salesman, stating: I understood what he was doing with his spreadsheet. It was pretty slick. He would show people that you could get -- he would successively increase their charter days * * * until their, you know, revenues were astronomical; just ridiculous levels of chartering days. And, I thought that was a scam. Yet petitioner assumed a daily charter rate of $ 425, whereas the maximum daily rate published by the Newport Sailing Club for charters of boats in the DROR's class was $ 190 per day. Petitioner testified that he arrived at his projection of total income by comparing the cost of his boat to the cost of other sailboats used in Newport Sailing Club projections, but he did not verify the validity of the other projections as reflecting actual earnings. Petitioner testified candidly that the investment tax credit *301 expected in 1985 (not in issue in this case) and the other tax benefits assumed in his projection were important to him. He was anxious to purchase in December 1985 because the investment tax credit would not thereafter be available. After the Court at trial indicated a tentative ruling in favor of respondent, petitioner argued that the substantial deduction for depreciation based on the accelerated cost recovery system (ACRS) should be disregarded because: And I would ask that you do and exclude the ACRS depreciation which is -- we know is an unrealistic schedule, and then also exclude any tax sheltering effect. And I think that it doesn't look as nearly as forbidding as you portray it. * * * Isn't the recapture of the depreciation at the end of the life -- I mean, I think that's when it all goes back. What you saved, because of the ACRS depreciation. The ACRS depreciation creates the loss, and there's where the tax savings are. Once the ACRS depreciation is completed, you have a vessel that has a zero basis, and then when you sell it you pay capital gains tax on the entire amount. * * * Even eliminating the deduction for depreciation, however, a reasonable assumption *302 about receipts based on the information in petitioner's possession at the time that he made the projection would have negated any potential for profit apart from the tax benefits relied on by petitioner. His actual history of losses shows that they occurred in large amounts without regard to depreciation. Petitioner is not entitled to deduct losses from the activity unless he had an actual and honest profit objective, apart from anticipated tax benefits. See Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. T.C. Memo. 1984-472; Hirsch v. Commissioner, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256 (referring to the relevant profit as taxable income); Friendship Dairies, Inc. v. Commissioner, 90 T.C. 1054, 1065-1067 (1988). Thus the most persuasive evidence in this case is the undisputed evidence of tax motivation, petitioner's history of losses with respect to the activity, and that the losses were actually projected rather than resulting from any unpredictable events. See Pacey v. Commissioner, T.C. Memo. 1988-68, *303 affd. in an unpublished opinion 878 F.2d 384 (7th Cir. 1989); compare Pryor v. Commissioner, T.C. Memo. 1991-109; Slawek v. Commissioner, T.C. Memo. 1987-438, and Dickson v. Commissioner, T.C. Memo. 1983-723. We agree with respondent that petitioner's primary intent was to obtain tax deductions. On the entire record, we conclude that petitioner did not have an actual and honest profit objective with respect to purchase of the sailboat. He is not entitled to deduct the losses in excess of the income from that activity. Section 6661, for 1986 and 1987, provides for an addition to tax if there is a substantial understatement of income tax as defined in that section. Petitioner has not shown that he is entitled to any reduction of the understatement subject to section 6661 or that any ground exists for relief from the provisions of that section. See Antonides v. Commissioner, 91 T.C. 686, 700-704 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Decision will be entered for respondent.